# New Shawmut Mining Company, Appellant, v. Gordon.

Argued January 6, 1967.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 13, 1967.

*Sebastian C. Pugliese,* with him *Carl A. Belin, Sr., Carl A. Belin, Jr., Dan P. Arnold,* and *Belin & Belin,* for appellants.

*William H. Eckert,* with him *Cloyd R. Mellott, G. Kirby Herrington, James S. Berger, F. Cortez Bell, Jr.,*

*Edwin L. Klett, Harold J. Boulton,* and *Eckert, Seamans & Cherin,* for appellees.

OPINION PER CURIAM, September 26, 1967:
Judgment affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The decision of this Court, speaking through a majority of the Justices, is an enigma, a baffling puzzle, and an inexplicable judgment. This Court condones the action of a court of common pleas which repudiates a decision of this Court. It then goes further and pins a bouquet on the lower court for its act of defiance by adopting the lower court's opinion as its own.

Let us briefly survey the history, the facts and the law involved in this litigation.

Seven years ago we had before us in *Highland v. Commonwealth,* 400 Pa. 261, a trustees' (Richey) deed whereby four trustees in 1900 conveyed to N. T. Arnold seventeen parcels of land for a consideration of $200,-000. Five of these parcels (VI, IX, XIV, and XVII) were in fee; the other twelve, one of which includes the two warrants 2000 and 2001 here at issue, were for "minerals of every kind and character." No distinction can be drawn among the mineral tracts. One of the main questions decided in *Highland* was whether this deed conveyed gas to Arnold. This Court held in *Highland* that the trustees' deed clearly and expressly conveyed the gas to Arnold. Indeed, without suspending reason and common sense, no different conclusion could have been reached.

The language of the trustees' deed (also referred to as the Richey deed) is singularly free of complexity and ambiguity. The trustees explicitly declare their intent as follows (emphasis supplied): "It is the intention of the grantors herein to convey to the said N. T. Arnold all the land, coal, coal oil, fire clay, *natu-*

*ral gas,* and other minerals and all rights vested in said grantors under and by virtue of the deed hereinbefore recited. . .''

The surface rights over the mineral tracts are described as follows: ''TOGETHER with the right and privelege of entering upon such lands as are not conveyed and being described herein and taking away said coal, coal oil, *natural gas,* fire clay and other minerals of every kind and character, and to erect such structures, ways, buildings, railways and shafts thereon both up and down, to cut and fill the surface wherever needed for railways for such purposes and to dig ditches and channels for waste water, and to do these and such other things thereon in such a manner as may be necessary in the judgment of the said N. T. Arnold, his heirs and assigns, to successfully mine and take away said coal oil, *natural gas,* fire clay and other minerals, or any part of them from the lands aforesaid without liability for damages which may be incurred to the surface of the said lands, or anything thereon or thereunder; and with the right to use such timber as was reserved to these grantors in the deed aforesaid, or in them in any way vested.''

This Court had no trouble in *Highland* in reaching the conclusion that this trustees' deed conveyed the gas to Arnold. Mr. Justice JONES, who wrote the Majority Opinion, could not have been more explicit: ''The *Richey* deed and the *Byrne* deed were executed almost simultaneously; in the former deed the title to the natural gas was expressly conveyed while in the latter deed natural gas is not even mentioned. It is inconceivable that, if Arnold has intended to convey the title to the natural gas to Byrne and Hall-Kaul which he had received in the *Richey* deed, he would not have described the *Byrne* and *Hall-Kaul* conveyances in language similar to or identical with the language in the *Richey* deed. Of great significance in the inter-

pretation of the parties' intent is the fact that the *Richey* deed expressly conveys natural gas rights yet the *Byrne* and *Hall-Kaul* deeds make no reference to such rights. Four minerals—coal, fire clay, limestone and iron ore—are specifically mentioned in the *Byrne* deed; two minerals—coal and coal oil—are specifically mentioned in the *Hall-Kaul* deed; a study of the language in both deeds indicates a high degree of selectivity and precision of language and description to have been employed by Arnold, especially bearing in mind that he had but recently been *expressly* given the rights to the natural gas. Arnold's omission of natural gas, coupled with the variation in the delineation of the minerals expressly conveyed to Byrne and Hall-Kaul, indicates that Arnold did *not* intend to convey *all* the mineral rights he had received from Richey et al. Furthermore, application of the rule of *ejusdem generis* clearly indicates that the words 'other minerals' was intended to include only minerals of the character or the type enumerated with particularity and natural gas is certainly not of such character or type." (Emphasis supplied.)

In my dissenting opinion in *Highland,* my single point of agreement was that it was "quite clearly established that Arnold obtained title to the natural gas."

This same deed came before the lower court in the case now at bar. Incredibly, the lower court refused to be guided by the deliberate and clearly expressed opinion in *Highland.* Instead it made the astonishing finding that the references to gas in the above language related *only* to the tracts in fee! Why it should ever become necessary, not only in this case, but in any other case, to specifically declare that gas is included when a fee is conveyed has not been confided to me by the Majority Opinion or by any other opinion in any other case.

Seven years ago the trustees' deed was a model of clarity to this Court which held that it *expressly* conveyed the gas to Arnold. So clear was this language that this Court did not hesitate to defeat the present appellants, who were also appellants in *Highland,* by pointing out this crystal clarity. Now the same appellants are urging upon us, with justice, this same clarity, but this Court retreats into the unfathomable caves of inconsistency and defeats them again. I do not envy the task of lawyers who base their advice to clients on what this Court has recently solemnly declared, only to find, after a tremendous expenditure of time, energy, and money, as evidenced by the size of this record, that this Court really did not mean what it said.

Regardless of the number of documents submitted in this case, the single critical issue is whether or not the trustees conveyed the gas to Arnold. I would hold, as we have held before, that they did. Nothing has changed since *Highland* to change the explicit language of the deed or the clear import of this Court's language in the *Highland* decision.

The whole position of the appellees rests on the circumstances that the deeds into the trustees convey minerals of every kind and character without naming gas. A long procession of decisions beginning with *Dunham v. Kirkpatrick,* 101 Pa. 36, and ending with *Highland* proclaims that such a circumstance raises only a *presumption* that gas is not conveyed. That the trustees' deed conveyed the gas to an innocent purchaser for value is an irrefutable fact and I hope I do not need at this late hour in the afternoon to have to explain that when the steam roller of facts approaches the weeds of presumption, the weeds flatten. Presumptions can never be substituted for facts.

It must always be remembered that those through whom appellees claim were the owners of the surface

over the mineral tracts conveyed in the trustees' deed and were beneficiaries to the trust and received their share of the consideration Arnold paid for the gas. The lower court was willing to let the appellees and their predecessors in title keep both the gas and the purchase money and coincidentally brand, without evidence, four dead trustees as incompetent or malefactors as well. This makes a mockery of justice.

Not only did the lower court brush aside the law as previously announced by this Court, but it just as cavalierly set aside all the additional circumstances that support the finding that the Richey deed did convey the gas. The fact that John E. DuBois, a grantor-trustee, declared in subsequently recorded deeds that it was the intention of the trustees to convey the gas to Arnold; the fact that Cyrus Gordon, appellee's decedent, declared in writing that the Bowman deed, through whom appellees claim had conveyed the gas and that thus Arnold had received it; that Cyrus Gordon acquired gas titles on the basis that Arnold had title to the gas; and that the appellees before us are even now enjoying royalties on the basis that good title to the gas was acquired by Arnold through the trustees' deed—all these facts and many others were held to be inadequate and inadmissible.

The history of the case, the facts, the law, the rationalization of events all support the position of the appellants. Nevertheless, the court below, with the magic wand of ghostly presumption, swept away the unbudgeable facts and sent the law spinning into the thin air.

And this Court approved of this extraordinary performance, it, in its turn, overlooking what was so well and simply said in *Sampson v. Sampson,* 4 Serg. & Rawle, 329, 334, that "circumstances inconsistent with such presumption will destroy it."

Finally, I cannot take seriously the references to an action in the federal courts to which appellants were

not parties, by which neither we nor they are bound, and in which the evidence available to us now was not produced.

The judgment of the court below should have been reversed. Since it was not, I dissent.